REBECCA LEVINE v. B. H. & S. AUTO WRECKERS, INCORPORATED.

Decided March 24, 1924.

**Contracts—Sale of Scrap—Rule to Show Cause Asked on Ground That Verdict was Not Justified by Proof—Evidence Considered and Rule Discharged.**

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the rule, *Edward R. McGlynn.*

*Contra, Gross & Gross.*

PER CURIAM.

This was an action for damages alleged to have been sustained by the plaintiff on the breach of a contract by the defendant. By the terms of the contract, as the plaintiff claimed, the defendant agreed to sell to her a heap of scrap-iron, uncertain in quantity, at the rate of $5 per ton, to be delivered upon the premises of the defendant. The plaintiff claimed that in this heap of scrap there were approximately seventeen tons of cast-iron automobile heads and some eighteen tons of automobile springs. There was no dispute as to the fact of the contract for the sale of the scrap nor of the price of that scrap. The defendant, however, contended that the sale was conditioned upon immediate removal of the scrap from its premises, and that that condition had been broken, and that it was, therefore, justified in disposing of it to a third person, which it did. The defendant also contended that there was no sale of cast-iron automobile heads or of automobile springs. The trial in the cause resulted in a verdict for the plaintiff, the amount of the award being $1,085.41.

The only ground argued before us for making the present rule absolute is that the verdict cannot be justified by the proofs. The testimony on the part of the plaintiff was that there were some two hundred and fifty to three hundred and seventy-five tons of scrap, besides some thirty to thirty-five tons of automobile springs and heads. The defendant's estimate of the number of tons of scrap was from seventy-five to ninety tons. Assuming that the jury rejected the plaintiff's claim with relation to the automobile heads and automobile springs, they were then called upon to determine the number of tons in the heap of scrap-iron which was embraced in the contract of sale. The plaintiff's low estimate of that quantity was two hundred and fifty tons; the defendant's low estimate was seventy-five tons. The unreliability of the estimates would seem to have been apparent to the jury, and they apparently took the mean between these two estimates, which would be one hundred and sixty-two tons. The pur-

chase price thereof was $5 per ton at the defendant's yard. The market value of the scrap was to be determined, as both parties agreed, at the mill in Bethlehem, where the plaintiff intended to dispose of it. That value, delivered at Bethlehem, was admitted to be $15 per ton; but before delivery the plaintiff was required to cut it in proper sizes for use at the mill, and pay the cost thereof, and also the cost of cartage and freight. These expenses, taken all together, were, according to the testimony, approximately $4 per ton. This sum added to the purchase price, made the cost to the plaintiff at the place of delivery $9 per ton. The profit on the sale, therefore would have been the difference between that amount and the market value of $15 per ton at Bethlehem, namely, $6 per ton, or $972 for one hundred and sixty-two tons. It appeared in the evidence that the plaintiff had paid a deposit of $100 to bind the bargain. This, added to the profit above mentioned, makes a total of $1,072, which is practically the amount of the verdict. Apparently, the jury based its verdict on some such method of calculation as we have indicated and we cannot say that it was wrong in doing so.

The rule to show cause will be discharged.